Nancy GRACIA, Plaintiff–Appellant,

v.

VOLVO EUROPA TRUCK, N.V., a foreign corporation, Defendant–Appellee.

No. 96–2774.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1996.

Decided April 24, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied June 10, 1997.

Bruce Robert Pfaff (argued), Francis T. Timons, Pfaff & Associates, Chicago, IL, for Plaintiff–Appellant.

Charles A. LeMoine, Wayne F. Plaza (argued), Dan M. Noland, Rooks, Pitts & Poust, Chicago, IL, for Defendant–Appellee.

Jonathan L. Loew, David I. Schrodt, Spitzer, Addis, Susman & Krull, Chicago, IL, for amicus curiae Illinios Trial Lawyers Association.

Jeffrey R. White, Association of Trial Lawyers of America, Washington, DC, for amicus curiae Association of Trial Lawyers of America.

Christine L. Olson, D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, for amicus curiae Defense Research Institute, Inc.

Before BAUER, COFFEY, and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

Appellant Nancy Gracia brought a diversity action against Volvo Europa Truck, N.V. ("Volvo") under Illinois common law for personal injuries sustained during a collision while riding in a truck manufactured by Volvo. Pursuant to Federal Rule of Civil Procedure 72(b), the district court judge referred this case to a magistrate judge, without the consent of the parties, for all matters up to and including the filing of the final pretrial order. (R. 151; R. 346 at 3.) After completion of discovery, Volvo filed a motion for summary judgment relying on preemption by a federal safety standard. The magistrate judge recommended denying Volvo's motion. The district court rejected the magistrate judge's report and recommendation, and granted Volvo's motion for summary judgment. Gracia appeals. We affirm the decision of the trial court.

## I. BACKGROUND

### A. *Facts*

Gracia worked for Brook Furniture Rental, which leased a 1986 Volvo FE6/13 truck from Ryder Truck Rental. On August 12, 1987, Gracia was riding with two of her co-workers in the cab of the Volvo truck. The truck was a forward control vehicle, with its windshield installed flush with its front end, as contrasted with the recessed windshield on a passenger car. Gracia was seated on the engine cover (often referred to as the "doghouse" or "engine bonnet") located in the front of the vehicle and between the two seats occupied by the driver and another passenger, both co-workers of Gracia. The seats of the driver and passenger are equipped with seat belts, however, because there is no passenger seat on the engine cover it was not equipped with a seat belt or any other restraining device. Neither of Gracia's co-workers had their seat belts buckled. The truck was traveling on the Kennedy Expressway when it rear-ended a salvage truck traveling in the same direction. Upon impact the Volvo's windshield was dislodged as designed and fell to the pavement. Gracia was catapulted through the windshield opening onto the pavement in front of the truck and sustained a spinal injury. Neither of the other two occupants were ejected from their seats, nor did they sustain serious injuries.

As a result of her injuries, Gracia was admitted to a hospital and received medical treatment. Gracia was unable to work from the date of the injury, August 12, 1987, until March 1, 1988. Thereafter, Gracia returned to part-time employment and a short time later resumed full-time employment assigned to different duties.

Gracia filed suit against Volvo, the truck's manufacturer, alleging that the vehicle was defective under Illinois common law for the windshield retention system was unreasonably dangerous and inadequate to prevent the windshield from ejecting during foreseeable impacts.[1]

### B. *District Court Proceedings*

On November 19, 1987, Gracia filed a product liability suit in the Circuit Court of Cook County. Thereafter, Volvo after establishing diversity jurisdiction had the case removed to the United States District Court for the Northern District of Illinois. Volvo moved for summary judgment arguing that Gracia's strict liability claim is preempted by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30103(b)(1), which provides that when a federal motor vehicle safety standard is in effect, any non-identical state safety standard is not applicable and is therefore, not binding on manufacturers. The magistrate judge found that the relevant federal safety standard regarding windshield retention requirements did not apply to the type of truck at issue in this case and recommended denial of the motion for summary judgment. The magistrate judge reasoned that the agency had excluded trucks like the

---

1. Gracia contends that she would not have sustained any serious injuries if the windshield had been bonded to the frame of the truck's cab by an adhesive material or metal flange and a rubber seal. The subject truck's windshield was held into the frame with rubber, which Gracia believes constitutes a design deficiency and makes the vehicle unreasonably dangerous. However, if the windshield had remained in place Gracia and her two co-workers could have suffered a fractured skull, lacerated face, or serious eye damage by impacting with the window.

one at issue from the standard's requirements, not because of an affirmative decision that there should be no regulation, but because of a lack of data demonstrating the need for that type of vehicle to be covered by the standard. (Report and Recommendation of March 6, 1996, at 7.) The district court rejected the magistrate judge's report and recommendation and granted the motion for summary judgment finding federal preemption. If it was the agency's intent to specifically exclude vehicles such as the one at issue from having to meet windshield retention requirements and the National Traffic and Motor Vehicle Safety Act's preemption clause precludes common law claims, then the granting of this motion was proper.

## II. DISCUSSION

### A. *Summary Judgment*

"Summary judgment is appropriate when the record, viewed in a light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Vector–Springfield Properties, Ltd. v. Central Illinois Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir.1997) (citing Fed.R.Civ.P. 56(c)). We review the trial court's order granting summary judgment de novo. *Id.* at 809. Upon the filing of a motion for summary judgment, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The mere existence of some alleged factual dispute is insufficient to defeat an otherwise properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case, the parties agree on the facts relating to the accident and injury, but dispute whether Gracia's tort claim is preempted by federal law.

### B. *Federal Preemption*

The Supremacy Clause of the Constitution provides that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to the Supremacy Clause, Congress has the authority to preempt state law. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986); *Time Warner Cable v. Doyle*, 66 F.3d 867, 874 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 974, 133 L.Ed.2d 894 (1996). "In determining whether the Congress has preempted state law, our task is to discern congressional intent." *Time Warner Cable*, 66 F.3d at 874 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381–82, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992)). A court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663–64, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993). Therefore, preemption will be found only in those situations where it is "the clear and manifest purpose of Congress." *Id.* at 664, 113 S.Ct. at 1737 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Federal preemption of state law can occur in three circumstances: (1) express preemption where Congress explicitly preempts state law; (2) implied preemption where Congress has occupied the entire field (field preemption); and (3) implied preemption where there is an actual conflict between federal and state law (conflict preemption). *English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990); *American Agriculture Movement, Inc. v. Board of Trade of Chicago*, 977 F.2d 1147, 1154 (7th Cir.1992). In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992), the Supreme Court suggested that a Congressional decision to include an explicit preemption provision in legislation forecloses a finding of implied preemption from that legislation, so long as the provision "provides a reliable indicium of congressional intent with respect to state authority." Some three years later, in *Freightliner Corp. v. Myrick*, 514 U.S.

280, 288–90, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995), the Court disagreed with that suggestion and proceeded to address the merits of the defendants' implied preemption argument. The Court explained that, "[a]t best, *Cipollone* supports an inference that an express pre-emption clause forecloses implied preemption; it does not establish a rule." *Id.*

## C. *National Traffic and Motor Vehicle Safety Act*

Congress enacted the National Traffic and Motor Vehicle Safety Act ("Safety Act") with the express purpose in mind of trying "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101.[2] In order to accomplish this objective, the Safety Act delegates to the Secretary of Transportation the authority to establish "federal motor vehicle safety standards" ("FMVSS" or "safety standards") that "shall be practicable, meet the need for motor vehicle safety, and be stated in objective terms." 49 U.S.C. § 30111(a). The Secretary has delegated this duty to the National Highway Transportation Safety Administration ("NHTSA"). 49 C.F.R. § 1.50; *see* 49 C.F.R. § 501.2.[3]

The safety standard relevant to this appeal is FMVSS 212, which "establishes windshield retention requirements for motor vehicles during crashes." 49 C.F.R. § 571.212.S1.[4] This standard does not apply to vehicles that have a gross vehicle weight rating of more than 10,000 pounds and, furthermore, explicitly excludes forward control vehicles. 49 C.F.R. § 571.212.S3. It is uncontroverted that this federal safety standard does not apply to the truck at issue because it not only exceeds 10,000 pounds, but it is also a forward control vehicle.

The federal Safety Act contains an express preemption clause that states:

When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment *only if the standard is identical to the standard prescribed under this chapter.*

49 U.S.C. § 30103(b)(1) (emphasis added). However, the act also contains a savings clause that reads: "Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e).

**2.** The Safety Act was previously codified at 15 U.S.C. § 1381 *et seq.*, but in 1994 was recodified without substantive change at 49 U.S.C. § 30101 *et seq.*

**3.** The Safety Act is a statute, while the federal motor vehicle safety standards are regulations established by the NHTSA; however, they are consistently referred to as "safety standards" and, therefore, this term is used to refer to them throughout this opinion.

**4.** The relevant portion of the safety standard states:

S2. *Purpose.* The purpose of this standard is to reduce crash injuries and fatalities by providing for retention of the vehicle windshield during a crash, thereby utilizing fully the penetration-resistance and injury-avoidance properties of the windshield glazing material and preventing the ejection of occupants from the vehicle.

S3. *Application.* This standard applies to passenger cars, and to multipurpose passenger vehicles, trucks, and buses having a gross vehicle weight rating of 4536 kilograms [10,000 pounds] or less. However, it does not apply to forward control vehicles, walk-in van-type vehicles, or to open-body type vehicles with fold-down or removable windshields.

S4. *Definition.* Passive *restraint system* means a system meeting the occupant crash protection requirements of S5. of Standard No. 208 by means that require no action by vehicle occupants.

S5. *Requirements.* When the vehicle traveling longitudinally forward at any speed up to and including 48 kilometers [30 miles] per hour impacts a fixed collision barrier that is perpendicular to the line of travel of the vehicle, under the conditions of S6, the windshield mounting of the vehicle shall retain not less than the minimum portion of the windshield periphery specified in S5.1 and S5.2.

S5.1 *Vehicles equipped with passive restraints.* Vehicles equipped with passive restraint systems shall retain not less than 50 percent of the portion of the windshield periphery on each side of the vehicle longitudinal centerline.

S5.2 *Vehicles not equipped with passive restraints.* Vehicles not equipped with passive restraint systems shall retain not less than 75 percent of the windshield periphery. 49 C.F.R. § 571.212 (emphasis in original).

A motor vehicle safety standard is broadly defined as "a minimum standard for motor vehicle or motor vehicle equipment performance." 49 U.S.C. § 30102(a)(9).

### D.  *Preemption Analysis*

■ Volvo asserted that Gracia's state common law claim is preempted by FMVSS 212 both expressly and by implication. The district court agreed and granted Volvo's motion for summary judgment. Gracia opposed Volvo's summary judgment motion on several grounds. First, in reliance on *Myrick*, Gracia asserts that since the windshield retention requirements of FMVSS 212 do not apply to the Volvo truck, there is no federal safety standard on windshield retention for this type of vehicle and therefore, no express preemption. Gracia further contends that, because there is no relevant standard, there also cannot be any implied conflict with state common law standards. However, Gracia's reliance on *Myrick* is misplaced, as that case fails to support her contention.

The facts and reasoning in *Myrick* do not preclude a finding of preemption in this case, and in fact, support the determination that Gracia's state common law claim is preempted. The *Myrick* Court in its decision likewise analyzed the federal Safety Act, but specifically dealt with FMVSS 121, which concerns stopping distances and vehicle stability requirements. In *Myrick*, two cases were consolidated in which trucks jackknifed and collided with oncoming plaintiffs, allegedly due to the absence of antilock braking systems ("ABS"). State common law design defects claims were brought against manufacturers of the tractor-trailers. The Court found that the common law actions were neither expressly nor implicitly preempted because there was no federal standard dealing with the vehicles in question. Prior to *Myrick*, the Ninth Circuit had suspended standard 121 until the NHTSA could compile sufficient evidence showing that the use of ABS on trucks and trailers would not increase the possibility of danger. *Paccar, Inc. v. NHTSA*, 573 F.2d 632 (9th Cir.1978). In response, the NHTSA amended standard 121 so that it no longer applied to trucks and

trailers. *Myrick*, 514 U.S. at 283–86, 115 S.Ct. at 1486. In *Myrick*, the Court concluded that:

> Indeed, the lack of federal regulation did not result from an affirmative decision of agency officials to refrain from regulating air brakes. NHTSA did not decide that the minimum, objective safety standard required by 15 U.S.C. § 1392(a) should be the absence of all standards, both federal and state. Rather, the lack of a federal standard stemmed from the decision of a federal court that the agency had not compiled sufficient evidence to justify its regulation.

*Id.* at 286–87, 115 S.Ct. at 1487 (footnote omitted). The Court found that standard 121 simply said nothing, one way or the other, about the use of ABS devices for tractor-trailers and concluded that there is no federal standard to conflict with. *Id.* at 288–90, 115 S.Ct. at 1488.

In contrast, here there is a specific federal standard addressing windshield retention for the truck at issue, in which the NHTSA determined that this type of vehicle should be exempt from the affixing requirement. The Supreme Court has held that "*a federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated,* and in that event would have as much preemptive force as a decision to regulate." *Arkansas Elec. Co-op. Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 384, 103 S.Ct. 1905, 1912, 76 L.Ed.2d 1 (1983) (emphasis added); *see also Myrick*, 514 U.S. at 286–88, 115 S.Ct. at 1487. In federal safety standard 212, which we analyze in this case, the NHTSA specifically listed which type of vehicles were excluded from complying with the windshield retention requirements, rather than merely reciting the vehicles that were covered by the standard.[5] "[W]e have a duty to 'give effect, if possible, to every clause and word of a statute.'" *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir.1995) (quoting *Moskal v. United States*, 498 U.S. 103, 109, 111 S.Ct. 461, 466, 112 L.Ed.2d 449

---

**5.** The standard specifically excludes forward control vehicles, walk-in van-type vehicles, and open-body-type vehicles with fold-down or removable windshields. 49 C.F.R. § 571.212.S3.

(1990)). *Therefore, the existence of the exclusionary language in the federal safety standard mandates that we interpret it as representing a conscious decision by the NHTSA.* An examination of the legislative history further bolsters that it was the intent of the NHTSA to exclude trucks such as the one at issue in this case from having to meet any windshield retention requirements.

In 1969 the NHTSA's predecessor, the Federal Highway Administration, proposed to extend standard 212 to cover vehicles such as the truck at issue. 34 Fed.Reg. 14438 (1969) (proposed Sept. 10, 1969); (R. 216, Ex. 5.) The response submitted in opposition to this amendment by the Automobile Manufacturers Association ("AMA") explained that the configuration of forward control vehicles renders any level of windshield retention basically meaningless because the impact either directly involves the windshield or results in severe deformation of the windshield mounting structure. (R. 216, Ex. 6, AMA's Comments on Proposed Amendment, at S70–3.4 and S70–3.5.) The AMA further explained that the windshield has been identified as an important means of escape from a truck, particularly when it comes to rest on its side after an accident. (*Id.*) After receiving responses such as these, the NHTSA decided that forward control vehicles, such as the truck at issue, would not be required to comply with the standard until September 1, 1978. 37 Fed.Reg. 16980 (1972) (recognizing that forward control vehicles would have difficulty in retaining windshields because of reasons given by AMA). The NHTSA finally determined in 1977 that given the design of forward control vehicles it was both technically impracticable to design windshields which could comply with the standards and impracticable to apply the standard's barrier crash tests to these vehicles. 42 Fed.Reg. 34289 (1977); 41 Fed.Reg. 36193 (1976).

The district court correctly determined that Gracia's common law claim was preempted and stated that "there has been 'an affirmative decision by agency officials' that there should be no standard because the

nature of the cab design on forward control vehicles makes compliance with the minimum standard set by FMVSS impracticable." (R. 346, Memorandum Opinion and Order of June 20, 1996, at 15–16 (quoting *Myrick,* 514 U.S. at 286–87, 115 S.Ct. at 1487).) Allowing a state common law standard on windshield retention would, accordingly, be a standard that is not identical to the federal one. Therefore, we conclude that the NHTSA's explicit exclusion of forward control vehicles from having to meet any windshield retention requirements in federal safety standard 212, along with the inapplicability of the standard to vehicles over 10,000 pounds, expressly preempts Gracia's state common law action.

### E. *Safety Standard and Common Law*

██ Gracia also argues that her common law claims are not preempted by the Safety Act's requirement that states only have identical motor vehicle safety standards. Gracia believes that the preemption of non-identical state safety standard applies only to state statutes and regulations, while common law actions remain available. In *Myrick,* the Court did not reach the issue of whether the preemption clause's use of the term "standard" preempts only state statutes and regulations, but not common law actions.[6] *Myrick,* 514 U.S. at 287 n. 3, 115 S.Ct. at 1487 n. 3. However, other cases have interpreted similar language in other preemption clauses and found that the term "standard" not only refers to state statutes and regulations, but can also refer to common law. *See, e.g., CSX Transportation,* 507 U.S. at 664, 113 S.Ct. at 1737–38; *Cipollone,* 505 U.S. at 521–22, 112 S.Ct. at 2620. Therefore, Gracia's argument is unpersuasive and does not alter our conclusion that her claim is preempted.

### F. *Congressional Intention and Legislative History*

██ Gracia additionally argues that reading the preemption and savings clause in conjunction leads to the conclusion that Congress did not intend for common law actions to ever be preempted. In support of this

---

6. The *Myrick* Court also found it unnecessary to reach the issue of whether the savings clause prevents manufacturers from using a federal

safety standard to immunize itself from state common law liability. *Myrick,* 514 U.S. at 287 n. 3, 115 S.Ct. at 1487 n. 3.

claim, she contends that the legislative history suggests that common law claims are not preempted and thereby precludes a finding of a "clear and manifest purpose" of Congress to preempt.

Because this is a case of first impression for this court, we believe it is helpful to review the legislative history which establishes that state common law claims can be preempted by a federal safety standard. The legislative history shows that the House Committee amended the original Safety Act bill to insert the savings clause. The House Committee Report explained the purpose of the savings clause in stating "it is intended and this subsection specifically establishes that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability." H.R.Rep. No. 89–1776, at 24 (1966).

The Safety Act, in order that it might achieve its primary purpose of reducing traffic injuries and fatalities, also had the objective of establishing uniform national safety standards and adequate enforcement of those standards, as the legislative history indicates. S.Rep. No. 89–1301, at 12 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2709, 2720. We agree that when a state requirement is not identical to the federal standard it would obviously impede the objective of uniform national standards. The NHTSA has decided that forward control vehicles and vehicles that weigh more than 10,000 pounds should be exempt from meeting windshield retention requirements.

If Gracia's common law claim was not preempted, then manufacturers would be placed in a position where they could be subject to varying standards from state to state, which could not all be complied with simultaneously. For instance, one state's common law could require stringent windshield retention, while another state's could require that windshields not be permanently affixed. If this were the case, then the manufacturer would be subject to liability if the windshield were ejected in an accident in one state, but in another state would be liable if a windshield remained intact and a trapped victim were unable to escape from the vehicle.

The intention of Congress was not to preserve common law claims when they conflict with NHTSA standards, but to prevent a manufacturer from having a complete defense to a common law action not addressed by a NHTSA standard by merely stating that it is in full compliance with all federal safety standards.[7] Additionally, the Supreme Court has held that similar savings clauses do not preserve conflicting or non-identical state common law actions from preemption. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–85, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992); *International Paper Co. v. Ouellette*, 479 U.S. 481, 493–94, 107 S.Ct. 805, 812–13, 93 L.Ed.2d 883 (1987). Therefore, the only way effect can be given to both sections is for common law claims to be preserved only when they do not deviate from the standards set forth by the NHTSA.[8]

## III. CONCLUSION

Having concluded that Gracia's common law tort action is preempted by FMVSS 212,

---

7. Gracia's dependence on language pertaining to the savings clause from both the House Report and statements from the floor of the Senate does not contradict this contention. The House Report stated "[i]t is intended and [the savings clause] *specifically establishes*, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability." H.R.Rep. No. 89–1776, at 24 (1966). Gracia also ineffectively seeks support from Senator Magnuson's statement that:

> The Senate conferees accepted the House provision that compliance with Federal standards does not exempt any person from common law liability. This provision makes explicit, in the bill, a principle developed in the Senate report. This provision does not prevent any person from introducing in a lawsuit evidence of compliance or noncompliance with Federal standards. No court rules of evidence are intended to be altered by this provision.

112 Cong.Rec. 21, 487 (1966).

8. Accordingly, a manufacturer who complied with all of the safety standards could still be sued under the common law for a defect that was not discussed and covered by the safety standards.

we find moot and need not analyze the alternative arguments that Volvo raises in support of its contention that the district court's decision be affirmed on other grounds. We AFFIRM the district court's decision to grant Volvo's motion for summary judgment based on federal preemption.