Vern STEINMAN, Floyd Sinclair, and Ron Eickelschulte, on behalf of themselves and those similarly situated, Plaintiffs,

v.

Teresa HICKS, Frank Ciastko, Charles Archer, Douglas Schmalz, Maureen Ausura, David Smith, and the Moorman Profit Sharing Plan, Defendants.

No. 00–3260.

United States District Court,
C.D. Illinois,
Springfield Division.

March 24, 2003.

Steven A. Katz, Douglas R. Sprong, Belleville, IL, for Plaintiff.

James A. Peckert, A. James Shafter, Decatur, IL, for Defendant.

## *OPINION*

RICHARD MILLS, District Judge.

Under the circumstances, did Defendants breach their fiduciary duty under ERISA to Plaintiffs in continuing to invest 65% of the Moorman Profit Sharing Plan's assets in Archer–Daniels–Midland common stock after the termination of the Plan?

No.

Summary judgment for Defendants.

### I. BACKGROUND

On December 30, 1997, the Archer–Daniels–Midland Company ("ADM") acquired the Moorman Manufacturing Company ("MMC") by merging MMC with a wholly-owned subsidiary of ADM. One year later, the wholly-owned subsidiary merged into ADM. ADM's acquisition of MMC was structured as a stock-for-stock, tax-free reorganization. Specifically, ADM acquired all outstanding shares of MMC's common stock and, in exchange, provided

each MMC shareholder with a designated number of shares of ADM common stock. By acquiring complete ownership of MMC, ADM became the employer of MMC's employees and the sponsor of MMC's employee benefit plans.

At the time ADM acquired MMC, MMC sponsored the MMC Employees Profit Sharing Plan ("the MMC Plan"). One of the purposes of the MMC Plan was to allow MMC's employees to acquire an ownership interest in MMC. The MMC Plan had two component parts. The first part of the MMC Plan had a 401(k) component which allowed participants to defer a portion of their wages to the MMC Plan. The second part of the MMC Plan had a profit sharing component whereby MMC would make additional discretionary contributions to accounts of eligible participants after the close of each year.

According to the terms of the MMC Plan, profit sharing contributions were made by MMC to the accounts of qualified employees based primarily on the employees' years of service. An employee was not entitled to receive the amounts contributed to his profit sharing account unless he terminated his employment with MMC, was fired, retired, died, or unless the MMC Plan was terminated.[1]

Immediately prior to the acquisition, approximately 65% of the profit sharing portion of the MMC Plan's assets were invested in MMC stock. Therefore, after the acquisition, approximately 65% of the prof-it sharing portion of the MMC Plan's assets were invested in and converted to ADM stock.[2] The remaining portion of the MMC Plan's assets were invested in two mutual funds: the MainStay Equity Index Fund and the Vanguard Bond Index Intermediate Fund. At the time of the stock exchange, the price of ADM common stock was $21.20 per share.

Furthermore, at the time of the stock exchange, ADM sponsored its own retirement plans for its employees including a 401(k) plan and an Employee Stock Ownership Plan ("ESOP"). Shortly after the merger of the plans, ADM amended its retirement plans to permit the former MMC employees to begin participating in the ADM benefit plans. In addition, ADM "froze" the MMC Plan which meant that, although it continued to exist, no new employees could become participants in and no additional contributions could be made to the MMC Plan. ADM assigned the responsibility for administering the "frozen" MMC Plan to its Benefit Plans' Committee ("the ADM Plans' Committee").[3]

The ADM Plans' Committee then had to determine what to do with the "frozen" MMC Plan. As for the 401(k) component of the MMC Plan, the ADM Plans' Committee directed that those accounts be transferred and converted to the ADM 401(k) plan. The MMC Plan's participants had no say or choice in the decision regarding what to do with their 401(k) accounts.

---

1. The terms of the MMC Plan did not allow for distributions of its assets to its participants prior to age 65 (55 in some cases) unless the participant became disabled.

2. In connection with the merger and pursuant to the "tax representation letter," the ADM Plans' Committee agreed that it would not sell, exchange, or otherwise dispose of more than 50% of the ADM stock received by the MMC Plan in the merger within one year of the merger.

3. The ADM Plans' Committee is currently composed of Teresa Hicks, Frank Ciastko, Charles Archer, Douglas Schmalz, Maureen Ausura, and David Smith, *i.e.*, the individually named Defendants in this case. Defendants Ausura and Smith, however, did not become members of the ADM Plans' Committee until after the MMC Plan had been terminated and all of its assets had been distributed.

As for the MMC Plan's profit sharing component, the ADM Plans' Committee decided to terminate the MMC Plan and, as part of the winding-up process and making final distributions to the participants, to allow the participants to determine what should be done with their accounts. Essentially, a participant could choose from one of three options. *First,* a participant could elect to "rollover" his MMC Plan profit sharing account to the ADM ESOP (*i.e.,* ADM's equivalent profit sharing plan) or to an Individual Retirement Account ("IRA"). *Second,* a participant could take a distribution of his account in the form of ADM stock. *Third,* a participant could take a distribution from his account in the form of cash.

On January 7, 1998, the ADM Plans' Committee notified all of the MMC Plan's participants that the MMC Plan would be terminated within twelve months. In addition, the ADM Plans' Committee sent a package of material to each participant informing the participant of the three options regarding his account along with a form to complete and return advising the ADM Plans' Committee of the participant's election. By formal resolution dated February 19, 1998, the ADM Plans' Committee terminated the MMC Plan effective April 1, 1998.

On August 13, 1998, the ADM Plans' Committee notified the MMC Plan's participants that it would not begin distributing the MMC Plan's assets to the participants according to their elections until it received a determination letter from the Internal Revenue Service ("IRS") confirming that the MMC Plan's termination would not adversely affect the MMC Plan's tax-qualified status. On March 25, 1999, the IRS issued a determination letter which concluded that the MMC Plan was tax-qualified. On April 1, 1999, the ADM Plans' Committee notified the MMC Plan's participants that the IRS had issued a favorable determination letter. In June 1999, the ADM Plans' Committee distributed the MMC Plan's assets to the MMC Plan's participants pursuant to their elections. Roughly 52% of the MMC Plan's participants elected to receive their distribution in the form of ADM stock, either by rolling it over into the ADM ESOP (40%) or as a stock distribution directly or to an IRA (12%).[4]

Between December 31, 1997, and June 1999, the price of ADM's stock declined from a high of approximately $23.00 per share in February 1998 to $15.56 per share when the MMC Plan's assets were finally distributed in June 1999. In fact, on December 31, 1997, the value of the MMC Plan's assets was approximately $155.2 million, and, by the time that the ADM Plans' Committee distributed the MMC Plan's assets to its participants in June 1999, the value of its assets had dropped to approximately $114 million.

As a result of this decline in the value of their MMC Plan's profit sharing accounts, certain MMC Plan participants filed an administrative claim with the ADM Plans' Committee on December 13, 1999, claiming that they were not paid all of the benefits to which they were entitled under the MMC Plan. Specifically, these participants contended that they were owed an additional $1.2 million in "principal loss" which represented the difference in the value of the ADM common stock held in their MMC Plan's profit sharing accounts on January 1, 1998 (*i.e.,* $21.20 per share) and the value of the ADM common stock held in their accounts on June 15, 1999 (*i.e.,* $15.56 per share). In other words, the

---

**4.** Two of the three named Plaintiffs, Vern Steinman and Ronald Eickelschulte, chose to receive their distributions in stock and, then, rolled the stock over into an IRA. The third named Plaintiff, Floyd Sinclair, chose to take his distribution in cash.

participants claimed that the ADM Plans' Committee's breach of its fiduciary duty to them (which was imposed upon the ADM Plans' Committee by the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 *et seq.*) cost them a loss of $6.00 per share on the value of the ADM common stock held in their MMC Plan's profit sharing accounts.

On June 6, 2000, the ADM Plans' Committee denied the participants' administrative claim. On September 29, 2000, the ADM Plans' Committee denied the participants' administrative appeal.

That same day, ADM, the ADM Plans' Committee, and the ADM Plans' Committee's individual members filed a declaratory judgment action in this Court, pursuant to 28 U.S.C. § 2201 *et seq.*, seeking a declaration from the Court that it owed no further obligation or duty under ERISA to the MMC Plan's participants. On November 20, 2000, the MMC Plan's participants filed a class action counterclaim against ADM, the ADM Plans' Committee, and the ADM Plans' Committee's members.

On January 3, 2002, the parties entered into a stipulation, which was approved by the Court, whereby ADM, the ADM Plans' Committee, and the ADM Plans' Committee's members agreed to voluntarily dismiss their declaratory judgment action against the MMC Plan's participants, and the MMC Plan's participants agreed to voluntarily dismiss their class action counterclaim. Furthermore, the parties agreed to a re-alignment of the parties whereby the declaratory judgment Plaintiffs became the Defendants and the class action

Defendants became the Plaintiffs. Finally, the parties and the Court agreed that Plaintiffs should be certified as a class, pursuant to Federal Rule of Civil Procedure 23, and that Plaintiffs would maintain this case as a cause of action against Defendants for an alleged breach of their fiduciary duties under ERISA.[5]

The parties have now filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II. ARGUMENTS

Plaintiffs argue that they are entitled to summary judgment because Defendants breached the fiduciary duty which Defendants owed to them pursuant to ERISA. Specifically, Plaintiffs assert that Defendants violated their fiduciary duty in that Defendants failed to protect them from losses which they incurred as a result of a massive, short-term decline in the MMC Plan's assets. As a result of this breach, Plaintiffs contend that the Court should order Defendants to repay the losses sustained by them as a result of the decline in the value of the MMC Plan's assets, including paying their attorneys' fees and prejudgment interest on the amount of loss suffered by them.

Plaintiffs argue that the undisputed evidence in this case establishes that Defendants owed a fiduciary duty to them pursuant to ERISA § 404(a)(1)(A) & (B). 29 U.S.C. § 1104(a)(1)(A) & (B). Plaintiffs assert that Defendants violated this duty by failing to consider the investment mix of the MMC Plan's assets and, therefore, are liable to them pursuant to ERISA

---

**5.** Specifically, Class Plaintiffs' Amended Complaint contains two Counts. Count I alleges that Defendants violated ERISA § 404(a)(1)(B) by agreeing and continuing to hold 50% of the MMC Plan's assets in ADM stock for at least one year without regard to whether continuing to hold the stock would be prudent. Count II alleges that Defendants

violated ERISA § 404(a)(1)(B) by continuing to hold the MMC Plan's assets in ADM stock until distribution in June 1999. Thus, Plaintiffs allege that Defendants are personally responsible to them pursuant to ERISA § 404, § 409(a), & § 502(a)(2). 29 U.S.C. § 1104, § 1109(a), & § 1132(a)(2).

§ 409(a). 29 U.S.C. § 1109(a). Plaintiffs claim that, given the short-term investment window between the time Defendants terminated the MMC Plan and the time Defendants distributed the MMC Plan's assets (*i.e.*, eighteen months), a prudent investor would have invested the MMC Plan's assets in a conservative, short-term investment (such as purchasing one-year treasury securities or investing in money market funds such as the Putnam Stable Value Fund) rather than leaving 65% of the MMC Plan's assets invested in ADM common stock.[6]

In fact, Plaintiffs contend that Defendants' breach of their fiduciary duty and Defendants' failure to satisfy the prudent man standard are clearly established by Defendants' failure to consider any investment alternative to leaving 65% of the MMC Plan's assets invested in ADM common stock after they terminated the MMC Plan. Had Defendants considered all of the circumstances surrounding the MMC Plan's investment in ADM common stock (*i.e.*, the short-term investment window, the termination of the MMC Plan, and the fact that ADM's stock was trading near a record high), Plaintiffs argue that Defendants would have and should have altered the investment strategy of the MMC Plan's assets. Because Defendants failed to give any consideration to the investment mix of the MMC Plan's assets, Plaintiffs assert that Defendants failed to discharge their fiduciary duties to them "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

In short, Plaintiffs contend that it was unreasonable and imprudent for Defendants to continue to hold 65% of the MMC Plan's assets under the circumstances and, more importantly, that Defendants violated their fiduciary duty owed to Plaintiffs imposed by ERISA in doing so. Accordingly, Plaintiffs argue that they are entitled to summary judgment.[7]

Conversely, Defendants argue that they are entitled to summary judgment because they did not abuse their discretion in continuing to hold 65% of the MMC Plan's assets in ADM common stock. Defendants assert that the only way in which they could be said to have breached their fiduciary duty to Plaintiffs in regard to the investment of the MMC Plan's assets is if they invested the MMC Plan's assets in a company's stock which was in danger of impending collapse at any time. Because Defendants invested the MMC Plan's assets in ADM common stock and because ADM was not in danger of impending collapse at any time, Defendants contend that they did not abuse their discretion or breach their fiduciary duty to Plaintiffs in investing the MMC Plan's assets.

Furthermore, Defendants claim that the termination of the MMC Plan and the length of the investment window did not

---

**6.** Plaintiffs contend that the shortness of the investment window dictated that Defendants engage in a more conservative approach to investing the MMC Plan's assets because dips in the price of ADM's stock which could be recouped in the long-term could not be offset in the short-term.

**7.** Plaintiffs suggest that the appropriate amount of damages to which they are entitled as a result of Defendants' breach of their fiduciary duty is the difference between the value of the MMC Plan's assets at the time of the merger with the ADM benefits plans and the value of the MMC Plan's assets when the ADM Plans' Committee distributed the MMC Plan's assets, *i.e.*, $6.20 per share. In addition, Plaintiffs ask the Court to award prejudgment interest at the prime rate on their damage award, and they also ask the Court to award them their attorneys' fees.

affect the prudence of remaining invested in ADM stock because the participants (including Plaintiffs) could have chosen to remain invested in ADM stock for the long-term. Defendants assert that the undisputed evidence presented to the Court establishes that ADM stock was a good investment for both the short and for the long-term, and thus,. Defendants contend that they did not violate the prudent man standard in deciding to keep 65% of the MMC Plan's assets invested in ADM common stock. Defendants assert that Plaintiffs have failed to identify even one fact which an investigation by Defendants would have revealed which would have indicated that ADM stock was an imprudent investment for the MMC Plan's assets.

Finally, Defendants Maureen. Ausura and David Smith argue that the Court should enter summary judgment in their favor because they did not become members of the ADM Plans' Committee until after the MMC Plan was terminated. As such, Defendants Ausura and Smith claim that they never became fiduciaries to Plaintiffs under the .MMC Plan because they never exercised any discretionary authority or control over the MMC Plan's assets. Because they were not fiduciaries, Defendants Ausura and Smith contend that Plaintiffs' suit against them for breach of a fiduciary duty must be dismissed.

Likewise, Defendant the Moorman Profit Sharing Plan argues that Plaintiffs' claims against it must be dismissed because Plaintiffs have failed to prove that it, as distinct from the individual Defendants, violated any duty under ERISA. Moreover, because a claim for a breach of a fiduciary duty under ERISA must be brought on behalf of the plan against a fiduciary, Defendant the Moorman Profit Sharing Plan contends that it cannot be a defendant in a suit brought on its own behalf. In other words, Defendant the Moorman Profit Sharing Plan asserts that it cannot be both a named Plaintiff and a named Defendant in the same suit. Accordingly, Defendant the Moorman Profit Sharing Plan argues that it is entitled to summary judgment on Plaintiffs' claims against it.

As for Plaintiffs' motion for summary judgment, Defendants argue that the Court should deny the motion. *First*, Defendants assert that the termination of the MMC Plan did not change the MMC Plan's investment horizon from long to short-term. *Second*, Defendants claim that, because ERISA specifically allows employer stock plans to hold up to 100% of its assets in employer stock, Plaintiffs' diversification argument (which is veiled as a violation of the prudent man standard) is inapposite.

*Third*, Defendants contend that Plaintiffs' position defeats the purpose for which individual account plans were created, *i.e.*, to allow employees to hold an ownership stake in their employer. More importantly, Defendants assert that their decision with regard to the MMC Plan's assets allowed the participants to retain certain valuable tax advantages, and thus, they did not breach their fiduciary duty to Plaintiffs in investing the MMC Plan's assets in ADM common stock.

*Fourth*, Defendants claim that Plaintiffs' position is inconsistent with case law which rejects the "short-term investment horizon" argument. *Fifth*, Defendants assert that Plaintiffs' argument defies logic in that, if the Court were to take Plaintiffs' argument to its logical end, then no ESOP could ever invest in any stock because all stocks fluctuate in value from time to time.

In any event, Defendants argue that the Court cannot enter summary judgment in Plaintiffs' favor because, even assuming that the Court agrees with Plaintiffs' claim that Defendants breached their fiduciary duty to Plaintiffs under ERISA, disputed

issues of fact remain regarding how much of the ADM stock Defendants were required to sell and when. Accordingly, Defendants ask the Court to deny Plaintiffs' motion for summary judgment.

Plaintiffs, likewise, ask the Court to deny Defendants' motion for summary judgment. Plaintiffs argue that the Court should not give any deference to Defendants' investment decisions because Defendants never made any decision. Specifically, Plaintiffs contend that no deference is due because Defendants never considered any investment alternative other than to maintain 65% of the MMC Plan's assets invested in ADM common stock.[8] Thus, Plaintiffs assert that the Court should not attach a presumption of reasonableness to Defendants' investment decision and that the Court should review Defendants' investment decision *de novo.*

In addition, Plaintiffs contend that the Court should not consider some of the evidence and arguments tendered by Defendants in support of their summary judgment motion because they did not tender this evidence and arguments in denying Plaintiffs' administrative claims.[9] Plaintiffs claim that Defendants cannot now augment the administrative record with new facts and/or opinions which have bearing upon their claims.

Finally, Plaintiffs argue that the cases cited to and relied upon by Defendants are easily distinguishable from the facts in the case *sub judice* because the fiduciaries in those cases were not dealing with a terminated retirement plan, *i.e.,* the fiduciaries had a long-term, rather than a short-term,

investment horizon. Accordingly, Plaintiffs ask the Court to deny Defendants' motion for summary judgment.

## III. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Ruiz–Rivera v. Moyer,* 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary. evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for

---

**8.** Plaintiffs dispute Defendants' reliance upon the "impending collapse" theory as a basis for recovery; rather, Plaintiffs assert that ERISA fiduciaries, such as Defendants, must consider all of the facts and circumstances with respect to a particular ERISA plan from time to time and take action(s) which are appropriate in light of those circumstances.

**9.** Specifically, Plaintiffs point to Defendants' "potential tax savings" argument as an example of an argument which they did not make during the administrative proceedings but which they have tendered to this Court.

trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir.1997).

## IV. ANALYSIS

### A.

■ Initially, the Court notes that it agrees that Defendants Ausura, Smith, and the Moorman Profit Sharing Plan are entitled to summary judgment. Defendants Ausura and Smith are entitled to summary judgment because they did not become members of the ADM Plans' Committee until after the MMC Plan was terminated and its assets distributed. As such, Defendants Ausura and Smith never became "fiduciaries" to Plaintiffs based upon the MMC Plan because they never: "(1) exercise[d] any discretionary authority or discretionary control respecting management of such plan or exercise[d] any authority or control respecting management or disposition of its assets, (ii)[ ] render[ed] investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii)[ ] ha[d] any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Because Defendants Ausura and Smith do not satisfy ERISA's definition of a fiduciary, they cannot be held liable to Plaintiffs based upon a claim of a breach of a fiduciary duty.

In addition, Defendants Ausura and Smith are entitled to summary judgment because ERISA's terms expressly exclude them from liability. ERISA § 409(b) provides: "No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). Because Defendants Ausura and Smith did not become members of the ADM Plans' Committee until after the MMC Plan was terminated and its assets distributed, they cannot be held liable under ERISA for any alleged breach of a fiduciary duty to Plaintiffs with regard to the MMC Plan. Accordingly, the Court finds that Defendants Ausura and Smith are entitled to summary judgment.[10]

### B.

■ Likewise, the Court finds that Defendant the Moorman Profit Sharing Plan is entitled to summary judgment. Plaintiffs have filed this breach of a fiduciary duty case against Defendants pursuant to ERISA § 404 and ERISA § 409. 29 U.S.C. § 1104; 29 U.S.C. § 1109. However, those sections only create liability. In order to enforce these rights and in order to obtain relief from the alleged breach of fiduciary duties, Plaintiffs must invoke ERISA's civil enforcement provision § 502. 29 U.S.C. § 1132. In their Amended Class Complaint, Plaintiffs cite to ERISA § 502(a)(2) as forming the basis for the filing of their breach of a fiduciary duty claim against Defendants.

However, the United States Supreme Court has held that ERISA § 409 authorizes recovery only by the ERISA plan as an entity. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Specifically, the Supreme Court has opined that "Con-

---

**10.** Plaintiffs failed to respond in any manner to these arguments tendered by Defendants Ausura and Smith in support of their motion for summary judgment. *See Teumer v. General Motors Corp.,* 34 F.3d 542, 545–46 (7th Cir.1994)(holding that the plaintiff waived a legal theory when he "fail[ed] ... to present legal arguments linking the claim described in the complaint to the relevant statutory (or other) sources for relief."); *see also Farnham v. Windle,* 918 F.2d 47, 51 (7th Cir.1990) (noting that the plaintiff's failure to brief legal theories supporting his claim in response to motion to dismiss constituted a waiver).

gress did not intend to authorize any relief except for the plan itself." *Id.* at 144, 105 S.Ct. 3085. Thus, the Supreme Court concluded that actions for a fiduciary breach under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2), must "be brought in a representative capacity on behalf of the plan as a whole." *Id.* at 142 n. 9, 105 S.Ct. 3085. Accordingly, to the extent that Plaintiffs have filed their ERISA claim pursuant to ERISA § 502(a)(2), Defendant the Moorman Profit Sharing Plan is entitled to a summary judgment because it cannot be named as a defendant in a suit in which it must be considered to be the plaintiff.

■ The Supreme Court's holding in *Russell* raises an additional problem for Plaintiffs, however, because they are not seeking relief on behalf of the MMC Plan. Rather, Plaintiffs have sued Defendants in their individual capacities and as representatives of the class in order to recover their individual losses sustained by Defendants' alleged breach of their fiduciary duties rather than suing on behalf of the MMC Plan.

Nevertheless, the Court will not dismiss Plaintiffs' suit on this basis. Although Plaintiffs have not cited to this provision in their Amended Complaint, the Court will construe their claims against Defendants as being grounded upon ERISA § 502(a)(3).[11] 29 U.S.C. § 1132(a)(3). The Supreme Court has held that ERISA § 502(a)(3) authorizes suits for individualized equitable relief for alleged breaches of fiduciary obligations. *Varity Corp. v. Howe,* 516 U.S. 489, 508–16, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Thus, the only way that Plaintiffs may maintain this suit in their individual capacities against Defendants for their alleged breach of their fiduciary duties pursuant to ERISA § 404 and § 409 is to rely upon the "catchall" remedial provision of ERISA § 502(a)(3).

■ In any event, the Court finds that Defendant the Moorman Profit Sharing Plan may not be named as a party Defendant in this suit even under ERISA § 502(a)(3). A suit for a breach of a fiduciary duty pursuant to ERISA § 409 may be brought only against a fiduciary of the ERISA plan. 29 U.S.C. § 1109(a); *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 (9th Cir.1985). As explained *supra,* ERISA defines a fiduciary as anyone who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... [or] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). ERISA also provides that every plan "shall provide for one or more named fiduciaries who ... shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Finally, ERISA explains that the "named fiduciary" is the party named in the plan instrument. 29 U.S.C. § 1102(a)(2).

Here, Defendant the Moorman Profit Sharing Plan was not a fiduciary to Plaintiffs pursuant to the MMC Plan. Defendant the Moorman Profit Sharing Plan, as an entity, did not have any authority or control over the management of its assets or any responsibility over its operation or administration; rather, those tasks were

---

**11.** The United States Court of Appeals for the Seventh Circuit has explained that a plaintiff need not cite to the statutory provision(s) which forms the basis for his cause of action. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,*

168 F.3d 967, 973 (7th Cir.1999); *see Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992)(holding that a complaint need not cite the statute upon which the claim is based).

placed upon the ADM Plans' Committee and its members. *See In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, * 15 (N.D.Cal. Sept.30, 2002) (holding that "to the extent that plaintiffs are asserting a claim for breach of fiduciary duty arising out of the selection of HBOC stock as an investment option or a failure to monitor the fund to determine its suitability as an investment option, the Administrative Committee and its members are proper defendants.").

Accordingly, the Court finds that Defendant Moorman Profit Sharing Plan is entitled to summary judgment because it does not meet ERISA's definition of a fiduciary. Because the Moorman Profit Sharing Plan was not a fiduciary to Plaintiffs under the MMC Plan, it cannot be held liable for an alleged breach of a fiduciary duty.

### C.

As for the remaining four Defendants, the resolution of this case turns largely upon the determination of which party has correctly framed the issue. Plaintiffs assert that the issue before the Court is: "whether the Defendants violated their fiduciary duties to the Class members by failing to properly investigate and/or consider the Plan's investment in ADM stock under the relevant circumstances (notably, the Plan's termination), and their subsequent failure to take actions necessary to safeguard the value of the Plan's assets." On the other hand, Defendants assert that the issue which this Court must resolve is: "[a]fter ADM decided to terminate the Profit Sharing Plan, did the ADM Benefit Plans Committee have to sell all of the Plan's ADM stock before it could be distributed to the participants?"

The parties do not dispute many of the factual and legal precursors which are necessary to resolve this case. For example, the parties agree that the MMC Plan is an ERISA governed plan. Moreover, the parties agree that the remaining four Defendants are "fiduciaries" (as that term is used in ERISA § 404(a)(1)) to the MMC Plan, its participants, and its beneficiaries and that, at such, they must discharge their fiduciary duties with prudence, skill, care, diligence, and solely in the interest of the MMC Plan's participants and beneficiaries. 29 U.S.C. § 1104(a)(1). The parties also agree that, if Defendants breached their fiduciary duties in any way, they may be held personally liable for the losses sustained to the MMC Plan as a result of the breach. 29 U.S.C. § 1109(a). Finally, the parties agree that, not only is the MMC Plan an ERISA governed plan, but that the MMC Plan is also an "eligible individual account plan" which means that the MMC Plan is exempt from ERISA's general diversification requirement set forth in ERISA § 404(a)(1)(C).[12]

### D.

■ The dispute between the parties, therefore, boils down to the question of whether, under the circumstances, Defendants breached their fiduciary duty to Plaintiffs in continuing to invest 65% of the MMC Plan's assets in ADM common stock after the termination of the MMC Plan.

---

12. Ordinarily, fiduciaries of an ERISA plan must "diversif[y] the investments of the plan so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C). Specifically, ERISA § 407(a)(2) prohibits an ERISA plan from holding more than ten percent of its assets in an employer's stock. 29 U.S.C. § 1107(a)(2). However, because Congress expressly authorized employer stock plans to hold up to 100% of its assets in an employer's stock, Congress also enacted a corresponding exception to the diversification rule: "In the case of an [employer stock] plan ... the diversification requirement ... and the prudence requirement (only to the extent that it requires diversification) ... is not violated by acquisition of holding of" an employer's stock. 29 U.S.C. § 1104(a)(2).

The Court finds that they did not.

■ *First,* the Court finds that Defendants' continued holding of 65% of the MMC Plan's assets in ADM common stock after the MMC Plan's termination was prudent, and therefore, Defendants did not breach their fiduciaries duties to Plaintiffs. Contrary to Plaintiffs' argument, the Court believes that the appropriate standard of review when evaluating Defendants' investment decision is for an abuse of discretion. In reaching this conclusion, the Court is persuaded by the opinions of the United States Courts of Appeals for the Third and Sixth Circuits.

In *Moench v. Robertson,* 62 F.3d 553 (3d Cir.1995), the Third Circuit held that, based upon trust law, the purpose of ERISA, and the nature of eligible individual account plans, "an ESOP fiduciary who invests in the assets in an employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." *Id.* at 571. The Third Circuit also went on to explain that "the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Id.* Likewise, the Sixth Circuit held in *Kuper v. Iovenko,* 66 F.3d 1447 (6th Cir. 1995),

> that a proper balance between the purpose of ERISA and the nature of ESOPs requires that we review an ESOP fiduciary's decision to invest in employer securities for an abuse of discretion. In this regard, we will presume that a fiduciary's decision to remain invested in employer securities was reasonable. A plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under

similar circumstances would have made a different investment decision.

*Id.* at 1459; *see Wright v. Oregon Metallurgical Corp.,* 222 F.Supp.2d 1224, 1233 (D.Or.2002)(adopting the Third and Sixth Circuits' position).

In the instant case, the Court cannot say that Plaintiffs have overcome the presumption of reasonableness attached to Defendants' decision to continue to hold 65% of the MMC Plan's assets in ADM common stock. Plaintiffs have conceded that ADM was a sound company and was a good company in which to invest, and the Court believes that Plaintiffs have not established that a prudent fiduciary acting under similar circumstances would have made a different investment decision.

Moreover, the Court is not persuaded by Plaintiffs' attempts to rebut the presumption of reasonableness based upon the termination of the MMC Plan or the shortness of the investment horizon. In *Kuper,* the Sixth Circuit affirmed the district court's finding that the defendants had not breached their fiduciary duties despite the fact that, during the eighteen-month transfer period, the value of the employer stock plummeted by 80% because "several investment advisors recommended holding [the] stock." *Kuper,* 66 F.3d at 1451, 1460. Here, during a similar eighteen month period, the MMC Plan's assets took a much less drastic reduction in value, and investment experts continued to rate ADM common stock as a solid investment.

The Court also believes that Plaintiffs' prudence argument, when stripped away to its core, is, in reality, a claim that Defendants failed to diversify and, thereby, failed to protect the MMC Plan's assets.[13] As explained *supra,*

---

13. One district court has theorized that "[i]f there is no duty to diversify ESOP plan assets under the statute, it logically follows that there can be no claim for breach of fiduciary duty arising out of a failure to diversify, or in other words, arising out of allowing the plan to become heavily weighted in company stock." *In re McKesson,* 2002 WL 31431588, at * 5.

however, because the MMC Plan is an eligible individual account plan under ERISA § 407(a)(2), it is exempt from ERISA's general diversification requirement. 29 U.S.C. § 1104(a)(2).

■ In addition, eligible individual account plans "are not designed to guarantee retirement benefits." *Kuper,* 66 F.3d at 1457. Rather, these plans are used both to foster employee ownership and as a technique of corporate finance. *Id.* In the Court's opinion, Plaintiffs are inappropriately attempting to hold Defendants accountable for the fluctuations of the marketplace—fluctuations which even Plaintiffs concede Defendants could not predict with 100% certainty. *See Fink v. National Sav. and Trust Co.,* 772 F.2d 951, 962 (D.C.Cir.1982) (Scalia, J. concurring in part and dissenting in part)(opining that "I know of no case in which a trustee who has happened—through prayer, astrology or just blind luck—to make (or hold) objectively prudent investments (*e.g.,* an investment in a highly regarded 'blue chip' stock) has been held liable for losses from those investments because of his failure to investigate and evaluate beforehand."). The Court believes that Defendants invested 65% of the MMC Plan's assets in ADM common stock in furtherance of ERISA's goals, and therefore, they should not be held liable for the decline in the value of ADM's common stock. *See Martin v. Feilen,* 965 F.2d 660, 670 (8th Cir.1992)(noting that "ESOP fiduciaries should not be subject to breach-of-duty liability for investing plan assets in the manner and for the ... purposes that Congress intended.").

Finally, to the extent that Plaintiffs suffered a loss, it was due, in part, to their decisions regarding the distribution of their assets in the MMC Plan. In reaching this same conclusion, one district court has noted that

[s]hort-term volatility was also of diminished importance to SBP participants because they could choose whether to take their benefits in the SBP in company stock, rather than sell the stock and take their benefits in cash. Participants could thereby potentially avoid selling their stock at a time when the share price is low. Therefore, if the retirement committee had reviewed the demographics of the SBP or retained an investment advisor to do an analysis of whether fiduciaries should be looking long-term or short-term, they would have determined that plan assets should be invested for long-term. Accordingly, the Court finds that such an analysis would not 'have revealed to a reasonable fiduciary that the investment at issue was improvident.' *Kuper,* 66 F.3d at 1459.

*Landgraff v. Columbia/HCA Healthcare Corp. of Am.,* 2000 WL 33726564, * 16 (M.D.Tenn. May 24, 2000)

### E.

In short, the Court finds that Defendants did not violate the prudent man standard in retaining 65% of the MMC Plan's assets invested in ADM common stock after ADM merged the MMC Plan into the ADM's ESOP. Although Plaintiffs have tendered expert testimony that a prudent investor would have reconsidered the investment given the time frame between the MMC Plan's termination and the distribution of its assets, Defendants have tendered evidence that ADM stock was a prudent investment, that ADM was a financially solid company, and that investment advisors rated ADM stock as a "buy." Accordingly, the Court cannot say that Defendants abused their discretion in maintaining 65% of the MMC Plan's assets in ADM common stock after the MMC Plan's termination and distribution of its assets.

■ *Second,* the Court finds that Defendants did not breach their fiduciary duty to Plaintiffs in their investigation (or lack thereof) prior to retaining 65% of the MMC Plan's assets invested in ADM common stock. Plaintiffs are correct that "[s]ignificant authority does support the proposition that ERISA fiduciaries have a duty to investigate the investment which they administer." *Kuper v. Quantum Chemicals Corp.,* 852 F.Supp. 1389, 1396 (S.D.Ohio 1994)(citing cases).

"Nevertheless, that duty is not absolute." *Id.* On the contrary, "proof of a causal connection . . . is required between a breach of fiduciary duty and the loss alleged." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 279 (2d Cir.1992). In fact, "even if a trustee failed to conduct an investigation before making a decision, he is insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway." *Roth v. Sawyer–Cleator Lumber Co.,* 16 F.3d 915, 919 (8th Cir.1994); *see Bussian v. RJR Nabisco, Inc.,* 223 F.3d 286, 300 (5th Cir. 2000)(same). "To hold otherwise would be to hold ERISA fiduciaries who exercise less than absolute vigilance automatically accountable for every market decline, even if the decline could not have been anticipated through the most exacting scrutiny." *Kuper,* 852 F.Supp. at 1397.

"The Court therefore must determine how a 'hypothetical prudent fiduciary' would have reacted if faced with the circumstances presented herein. As the prudent person standard is not concerned with results, the Court must evaluate the fiduciaries' actions from the perspective of the time of the investment decision rather than from the vantage point of hindsight.

Such judicial review of fiduciary actions has been termed highly deferential." *Id.* (citations and quotations omitted).

In the present case, even assuming, *arguendo,* that Defendants failed' to conduct an investigation and/or failed to consider alternative investments for the MMC Plan's assets upon its termination, Plaintiffs have failed to identify any fact or circumstance which would have made investment by Defendants in ADM common stock imprudent other than the ones rejected by the Court *supra.* More importantly, Plaintiffs have failed to tender any evidence which would show that a hypothetical prudent fiduciary would not have decided to retain 65% of the MMC Plan's assets invested in ADM stock.

■ Accordingly, the Court finds that there are no genuine issues of material fact to be decided by the trier of fact and also finds that Defendants are entitled to judgment as a matter of law on the Class Plaintiffs' Amended Complaint.[14]

*Ergo,* Plaintiffs' Motion for Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is ALLOWED. Accordingly, summary judgment is hereby entered in favor of Defendants and against Plaintiffs.

14. The Court rejects Plaintiffs' argument that the Court should limit its inquiry to the facts and arguments raised by the parties during the administrative claims proceedings. Because Plaintiffs' suit is not one seeking an award or a reinstatement of denied benefits but is suit based upon an alleged breach of a fiduciary duty, the Court is not limited to the administrative record.